RICHARD R. GŒTCHIUS *et al.*, plaintiffs in error, *vs.* MARY HODGES, administratrix, defendant in error.

1. The legal construction of the agreement made between the plaintiffs in error and the defendant, which was, by its terms, to be made an award, and was so made by the arbitrators and also entered on the minutes of the Court and made the decree thereof without exception, is that defendant was to receive from plaintiffs the amount therein specified by January 1st, 1871, for her interest in the partnership property, and that defendant was to deposit $2,400 00 of said amount as an indemnity against her proportion of the liability for outstanding debts, under the terms set out in the agreement, and to protect the interest conveyed to Theodore Ewing against the same. .

2. If there was ambiguity as to the meaning of the agreement, etc., the verdict of the jury rendered on the application to have a more full decree entered, and for an execution to enforce the same, and the issue made thereon, determined the questions involved, and authorized the order of the Court that was granted.

Contracts. Ambiguity. Verdict. Before Judge JAMES JOHNSON. Muscogee Superior Court. May Term, 1873.

Mary W. Hodges, as administratrix of Samuel K. Hodges, deceased, filed her bill against Richard R. Gœtchius and Reuben H. England, making, in substance, the following case:

On July 28th, 1856, complainant's intestate and Richard R. Gœtchius entered into a copartnership, under the name and style of Gœtchius & Hodges. Gœtchius was to contribute to said business certain lots of land of the value of $5,000 00, and Hodges $5,000 00 in cash. The improvements to be made on said lots, in the erection of machinery, etc., were to constitute a portion of the capital stock. Hodges was to keep the books and be the financial agent of the firm. Gœtchius was to give his whole time and attention to the mechanical portion of the business. The partnership was to continue until dissolved by mutual consent, or the death of one of the partners, or by operation of law. An inventory and balance sheet was to be made annually and each party allowed to draw out a portion of the profits. In case of the death of either partner, the survivor should conduct the business for the benefit of all parties until the close of the current year, and the legal representative of the deceased, with the surviving partner, were allowed still further to continue said business as long as they might consider best.

Hodges fulfilled all of his undertakings under said contract of partnership. The business of the firm commenced on October 1st, 1856, and continued until September, 1864, when Hodges died intestate, leaving complainant as his widow, his only heir-at-law.

The profits of the firm were invested in materials, machinery and buildings adapted to the business, which was for steam planing, sash making, and other matters in connection with house building, so that at the death of Hodges the partnership property was worth from $50,000 00 to $60,000 00. At the close of the war the lots and buildings were worth, and are now worth, from $30,000 to $40,000 00, whilst the firm indebtedness did not exceed $3,000 00, with interest from about the year 1861. At the death of Hodges he owned three-eighths of the whole property, and was liable for the same proportion of the firm debts, having, during his life, with the consent of Gœtchius, received into the business the defendant, England, by selling to him one-eighth of his half interest.

After the close of the war, the defendants, being in possession of the firm property, went on to repair the same and to carry on the business hitherto conducted, and to lease out to other parties, at large rents, parts of said firm property, avowedly for the purpose of paying the partnership debts.  They submitted to complainant a proposition to carry on the business in the name of Gœtchius, England & Hodges, the defendants each reserving to himself, as a part of the expenses, $1,200 00, to which complainant refused to accede, deeming it best that the creditors should be paid off and the partnership closed.  Against the objection of complainant, the defendant, Gœtchius, has continued to use the name of Gœtchius, England & Hodges, to use said machinery to its great detriment and injury, and to appropriate all the proceeds thereof to himself.  He has not paid off any of the debts of Gœtchius & Hodges, but has allowed the same to be sued and to accumulate with interest.  The defendants have not paid to her anything for the use of said property except $691 26.  Upon a fair accounting, said defendants, after paying the debts of the former firm of Gœtchius & Hodges, would be indebted to her in a large amount, for which she is entitled to a lien on said property.

Gœtchius has filed a bill for partition, asking for a sale of said property, in which he claims a large part of the machinery aforesaid to be his individual property.  If said petition is granted, and said property sold before the defendants shall account to complainant for her interest in the same, ignorant of what the sum may be, she would be compelled to raise the whole amount which might be bid for said property, or stand by and see her interests sacrificed.

Prayer, that Gœtchius may be enjoined from proceeding with said petition for partition; that a receiver may be appointed to take charge of said estate and rent the same; that the defendants may be required to deliver the books of said firm, and the accounts and vouchers belonging thereto, to said receiver; that the defendants be restrained from collecting any

partnership debts; that an account be had; that the writ of subpœna may issue.

The defendants answered, substantially, as follows: The firm of Gœtchius & Hodges was formed, as stated in the bill, and continued until July 9th, 1860, at which time Hodges sold to one Theodore Ewing an interest of one-eighth in said business. The new firm continued business, under written articles of agreement, in which it was stipulated that Gœtchius, for his skill and services, was to receive an annual salary of $1,200 00; Hodges, for his services, $1,000 00, and Ewing, $900 00. In April, 1863, Ewing sold his interest to England. The business was continued under the name of Gœtchius, Hodges & Company until the death of Hodges, which took place in September, 1864. In July, 1860, the property of the firm of Gœtchius & Hodges, including the outstanding indebtedness to them, was estimated to be worth $50,000 00. During the war, in October, 1863, the Confederate States Government took possession of the real estate, machinery, etc., of said firm for public purposes, and retained possession until April, 1865, at a rent of $1,200 00 per annum, in Confederate money.. During the month last aforesaid, Wilson's command of Federal forces entered the city of Columbus and were about to burn all of the aforesaid property, when, through the exertions of the Rev. Dr. Hawks, the buildings were saved on the condition that all of the Confederate property should be burnt in the streets and the machinery destroyed, which was accordingly done. A short time after the destruction of the aforesaid machinery, the defendants and complainant had a conference in reference to the repairing of the same. It was agreed that the repairs should be made at the joint expense of all parties in proportion to the respective interests held by them. Defendants made the repairs at a large expense, to-wit: $8,650 00, besides the earnings of the business, but complainant has failed and refused to pay her proportion thereof. They have paid all the debts outstanding against Gœtchius & Hodges, except those to which they had a legal defense. Defendants deny that they carried on business in the name

of Gœtchius, Hodges & England, or that they have incurred new liabilities for which complainant is bound. They deny that the profits have been large. The destruction of their machinery in April, 1865, necessarily incurred heavy expenses, and the desolate condition of the country forbade large profits. They admit the filing of the petition for a partition. Having made various efforts to get complainant to a settlement and failed, they took this step to force such a result. Since the filing of complainant's bill, they have made no motion in reference to said partition, under the hope that a full and fair account might now be had.

The answer then proceeds at length to give a detailed statement of the business, etc., of the aforesaid firms, all of which is omitted as unnecessary to an understanding of the decision.

The matters in controversy were submitted to arbitration by an agreement executed on March 15th, 1870, William A. Barden selected by complainant, George W. Woodruff by defendants, and James M. Smith by the arbitrators.

Pending the arbitration, on November 5th, 1870, the following agreement was entered into :

"This agreement, made and entered into this 5th November, 1870, between Mary W. Hodges, administratrix and sole heir-at-law of Samuel K. Hodges, deceased, she being the widow of said Hodges, who died intestate, of the one part, and Richard R. Gœtchius and Reuben H. England, of the other part, witnesseth, that whereas, certain matters of difference have heretofore existed between the said parties as to the terms of dissolution of the late partnership of Gœtchius & Hodges, which expired by the death of Samuel K. Hodges, and which the said Mary refused to continue ; and whereas, all such differences have been settled on the following terms, to-wit: the said Mary W. is to receive $7,500 00 for her three-eighths undivided interest in the property known as the Columbus Steam Planing Mills ; and whereas, there are certain judgments and debts outstanding against the said firm, a list of which is hereto appended, it is further agreed that Mrs. Hodges shall invest the sum of $2,500 00 in United States

five-twenty bonds, or other good security of bond and mort-gage, if she can obtain a greater rate of interest, which interest she shall be allowed to draw and use, said securities to be deposited in the hands of Smith & Alexander, as attorneys of Theodore Ewing, and to be held by them as an indemnity to the said Ewing until all of said debts shall be compromised, or in some other way finally discharged, when the same are to be paid over to Mrs. Mary W. Hodges, her heirs or assigns, and in case at any time a judgment, founded upon the debts herein set forth, should be about to sell the interest conveyed to Theodore Ewing, then the said Smith & Alexander shall be at liberty to use any of said securities for the purpose of paying off the same. And it is further agreed that if either the said Ewing, or the said Gœtchius, or any one for them, shall, directly or indirectly, purchase or pay off any of said claims at less than the face thereof, Mrs. Hodges shall only be charged the actual amount at which said claims were purchased or paid off; and that William A. Barden, George W. Woodruff and James M. Smith, arbitrators, each receive $200 00, to be paid *pro rata* by the several parties. And we agree that this shall stand as an award, provided the payment above stated of $7,500 00 shall be made by the first of January, 1871.

(Signed)         "MARY W. HODGES, Adm'rx,
                      " per R. J. Moses, Attorney.
(Signed)         " R. R. GŒTCHIUS,
                 "R. H. ENGLAND,
            "by M. H. Blandford, Attorney at Law."

At the November term, 1870, of Muscogee Superior Court, the foregoing agreement was returned by the arbitrators as their award, entered on the minutes and made the decree of the Court. At the May term, 1873, of said Court, complainant moved for a more full decree, and for execution. The defendants showed to the contrary, as follows:

1st. Said award was not rendered upon the submission made, but upon a contract and agreement entered into subse-

quently by movant, defendants, and one Theodore Ewing, who was not a party to the arbitration, which contract was that movant was to sell to Ewing her intestate's three-eighths interest in the Columbus Planing Mills property at and for the sum of $7,500 00. The deed was made and deposited as an escrow, to be delivered upon the payment by Ewing of the said sum of $7,500 00, which was not binding upon any of the parties unless paid by January 1st, 1871.

2d. Because it was never intended between movant and defendants that they were ever to be the purchasers of said interest, or responsible therefor, or that any decree or judgment should be entered by the Court against them for the said $7,500 00, but that the award was to be of no effect except the purchase money was paid by Ewing, the purchaser, and not by these defendants.

3d. Because Theodore Ewing, the purchaser of movant's three-eighths interest, is not a party to any of the proceedings before the Court, is not within its jurisdiction, and therefore no decree can be rendered against him.

4th. Because the award of the arbitrators was founded upon a condition precedent, which has not been performed, and without which the award cannot be legally executed.

5th. Because the decree asked for would make defendants purchasers of property they never bought, or the securities for the purchase money thereof, and for which they never bound themselves, nor in anywise made themselves liable.

Issue was joined by the movant as follows:

"And the said Mary W. Hodges says that said agreement for an award was made by the parties as set forth, and that when said agreement was made, the said Gœtchius & England undertook that Theodore Ewing would buy the three-eighths interest of Mrs. Hodges, and that all she agreed to do, or was expected to do, was to wait until January 1st, 1871, for the payment of the money."

The jury found the issue in favor of the complainant; whereupon, the Court ordered and decreed "that a writ of execution do issue, to be directed to the sheriff of said county of

Muscogee, commanding him to seize and sell the said Planing Mills in said bill and decree specified, under the rules regulating sheriff's sales, and that from the money so raised he pay to said Mary W. Hodges the sum of $7,500 00, with interest thereon from the 1st of January, 1871, less the sum of $2,500, which last sum is to be paid over to Messrs. Smith & Alexander, under the provisions and terms of said decree in said cause.

"And it is further ordered and decreed that said sheriff, upon said sale and payment of the purchase money, he shall make to the purchaser or purchasers a conveyance therefor in fee-simple, and that he make due return of his actings on said writ of execution to this Court on the first day of the next term thereof."

To this last order the defendants excepted, and now assign error thereon.

BLANDFORD & CRAWFORD; INGRAM & CRAWFORD, for plaintiffs in error.

R. J. MOSES, for defendant.

TRIPPE, Judge.

1. The exception to the order of the Court is, that, the agreement of the parties which was, by its terms, to be made the award of the arbitrators, and was so made, and entered on the minutes of the Court and made the decree thereof, did not bind plaintiffs in error for the payment of the $7,500 00 which was to be received by complainant for her three-eighths interest in the property, but was to be paid by Theodore Ewing. Ewing was not a party to the submission, the agreement or the award, nor the order making the award the decree of the Court. The parties litigant were Mrs. Hodges on one side and Gœtchius and England on the other. The award was, that she should receive $7,500 00 for her interest in the property. Receive it from whom? There could be but one source from which it could come by the award. If

Gœtchius *et al. vs.* Hodges.

one party to a suit is to receive money in settling the litigation, the other party certainly must pay it, and must be bound to pay it, else the award and the judgment is a nullity. Courts do not grant judgments as mere surplusage, as a matter contingent on what an outside party may choose to do. At least they will not be so construed, unless it plainly appears that the parties so intend. We do not think that such intention so appears in this case. It is true the agreement and award speak of an interest to be conveyed to Ewing, and probably it was Mrs. Hodges' interest. But that even is not so stated. She was to deposit a portion of what she was to receive as a security to protect the interest conveyed to Ewing against any debts due by the company. This suggests that Ewing was to have her interest. But it is nowhere said that Ewing was to make the payment to her, or that she was to look to him for it; nor, indeed, that Ewing was to pay the $7,500 00 to any one, or what amount, if any, he was to pay, or to whom. The award and judgment were between Mrs. Hodges and Gœtchius and England, and they had the right to call on each other respectively for its enforcement.

2. But even if there was on the face of the agreement, award and decree any ambiguity on this point, these very questions were made and issue joined, and they were passed upon by a jury. That verdict stands; there is no motion to set it aside, nor any complaint made against it. Was it, too, a vain thing, like, it is claimed, the agreement was; and the award and the order making the award the judgment of the Court? Do they all mean nothing, taken singly or collectively? What, then, would end this litigation? What are and where are the rights of the complainant? We think that the verdict of the jury, rendered on the application for an execution to enforce the decree and the issue made thereon, determined the questions involved, and authorized the order of the Court that was granted. If there were errors committed in obtaining that verdict, exceptions should have been made to them, and their correction sought.

Judgment affirmed.